**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS | : | CIVIL ACTION |
| AMERICA, INC., *et al.* | : | |
| | : | |
| v. | : | NO.  21-562 |
| | : | |
| WILLIAM GRECIA | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                      March 15, 2021

Congress grants patent owners the ability to sue manufacturers and sellers of products infringing on their valid patents.  Congress also grants manufacturers and sellers facing or fearing claims their products infringe a patent to seek an Order declaring the patent at issue is invalid and their products do not infringe. We today address whether a global manufacturer can proceed before us against the Pennsylvania patent owner who earlier sued an allegedly infringing seller of a product in Texas when there is no identity of parties or products in the two cases and no apparent control by the global manufacturer over the seller or its product sued in Texas.

The Pennsylvania patent owner pro se asks us to dismiss the manufacturer's invalidity suit before us or transfer it to Texas to join his infringement case against the seller of another product allegedly using his patent.  We favor deferring to the earlier case to avoid duplicate effort and possible forum shopping when possible.  But we must have sufficient similarity in the product and requested scope of relief beyond the same patent at issue by unrelated persons.  We lack the similarity in this dispute. The patent owner did not sue the manufacturer in Texas.  There is no basis to find the manufacturer controls the seller of a different product. The manufacturer's declaratory judgment case before us addresses different products and broader subjects. We deny the patent owner's motion to dismiss or transfer. We will proceed on determining the validity of the patent at issue in the patent owner's home District.

I.        **Alleged facts**

Pennsylvanian William Grecia owns United States Patent 8,404,555 ("'555 patent"), titled "Personalized digital media access system (PDMAS)."[1] The '555 patent relates to the field of digital access management schemes used by makers of electronic products to protect sensitive data from illegal access using computerized devices.[2] Mr. Grecia claims his patent "teaches a more personal system of access rights management which employs electronic ID, as part of a web service membership, to manage access rights across a plurality of devices."[3] He also owns United States Patent Numbers 8,533,860 ("'860 patent") and 8,887,308 ("'308 patent") which share the same specifications and relate to the same subject matter.[4]

Samsung Electronics America and Samsung Electronics Co., Ltd. (collectively "Samsung") is a global electronics firm headquartered in South Korea with 244 subsidiaries across the world, including in the United States.[5] Samsung developed, used, and sold cloud-based data access software including Samsung Knox and Samsung Pay. Knox is a "mobile device security framework that includes backend tools to allow organizations to manage their employees' devices."[6] Samsung Electronics Co. developed Knox and Samsung Electronics America markets and sells the software.[7] Samsung Pay is Samsung's mobile payment software.[8]

***Mr. Grecia wants Samsung to buy his patent.***

Mr. Grecia made repeated claims these Samsung products infringe his '555 patent while trying to induce Samsung to buy it over the past several years. Mr. Grecia first offered to sell a patent portfolio, including the '555 patent, to Samsung in 2014.[9] Mr. Grecia's counsel described the importance of the invention, existing litigation with Samsung's competitors, and how the patents may benefit Samsung.[10]  Samsung did not respond. Mr. Grecia's counsel wrote again a couple weeks later comparing the '555 patent against a patent application submitted by Samsung,

which later became United States Patent Number 9,898,588 ("'588 patent") owned by Samsung.[11] Mr. Grecia's counsel told Samsung it had a duty to disclose in the application "the prior teachings and disclosure of Mr. Grecia's patents."[12]

Samsung did not respond to either of Mr. Grecia's letters.

### *Mr. Grecia's litigation tactics.*

Mr. Grecia began taking a more aggressive approach.[13]  He filed approximately seventy patent infringement suits asserting the '555 patent or its continuations, the '860 patent and the '308 patent.[14] He repeatedly threatened suits against Samsung and its customers for alleged infringement of the patents and unsuccessfully sued Samsung three times.[15] In his first suit against Samsung six years ago, Mr. Grecia alleged Samsung infringed the '308 patent.[16] Mr. Grecia voluntarily dismissed this suit three weeks after filing.[17]  In two subsequent suits filed in 2016 and 2019, Mr. Grecia alleged infringement of the '860 patent and then, for the second time, the '308 patent.[18] Samsung obtained judgments of invalidity of all asserted claims in both cases and the Court of Appeals for the Federal Circuit affirmed both orders of invalidity.[19]

Mr. Grecia sued Samsung's customers Verizon, T-Mobile, and Sprint for infringement of the '555 patent and the '308 patent based on the sale of "Samsung Pay Devices," or Samsung phones preloaded with the Samsung Pay application.[20] In amended complaints filed in each of these cases, Mr. Grecia withdrew the infringement allegations of the '555 patent, "and then, faced with a motion to dismiss, dismissed the cases entirely without prejudice."[21]

### *Mr. Grecia tried to again induce Samsung to purchase the '555 patent.*

Mr. Grecia began emailing Samsung approximately a year ago claiming "purported improprieties by Samsung in its briefing to the court that invalidated the '308 patent and an alleged failure by Samsung to disclose [Mr.] Grecia's patents in Samsung's prosecution of its own patents

that if disclosed to the Patent Office would, according to [Mr.] Grecia, invalidate thousands of Samsung's patents."[22] Mr. Grecia told Samsung he would be willing to resolve the issues and remain silent about Samsung's alleged transgressions if Samsung purchased his patents for an amount Samsung claims "border[ed] on, if not crossing into, extortion."[23] Mr. Grecia later offered to sell his company to Samsung, including its patent portfolio.[24] Samsung responded the next day, "Samsung is not interested in a mediation, patent purchase, or license from Mr. Grecia."[25] Mr. Grecia responded with yet another offer and reiterated his deadline to accept.[26] Samsung allowed the deadline to pass.[27]

Mr. Grecia emailed Samsung again at the end of March 2020 seeking a "global settlement with Samsung."[28] He attached a claim chart allegedly showing how the '555 patent can be read on a Samsung mobile point of sale ("mPOS") application.[29] Samsung responded, "(1) the allegedly infringing mPOS application is not, and has never been, available in the U.S., and (2) the mPOS application would not infringe anyway."[30] Samsung also addressed Mr. Grecia's allegations of misconduct and reiterated it had no interest in a settlement or any of Mr. Grecia's other proposals.[31]

Samsung did not hear from Mr. Grecia again until nine months later in January 2021.[32] Mr. Grecia emailed Samsung's counsel and a Senior Vice President in Samsung's Silicon Valley intellectual property office renewing his previous offers to sell his portfolio and realleging his theory of wrongdoing by Samsung in failing to disclose Mr. Grecia's patents to the Patent office.[33] He attached another claim chart to show the claims of the '555 patent read on Samsung's Knox mobile security software.[34] Mr. Grecia requested Samsung respond, if interested in purchasing his '555 patent, by February 5, 2021.[35] Samsung did not respond.

Mr. Grecia sent another email about two weeks later attaching a new claim chart allegedly showing claims of the '555 patent read on Samsung's mobile payment application, Samsung Pay.[36]

This claim chart identified the allegedly infringing use of Samsung Pay by a third-party bank promoting Samsung Pay, and not an alleged infringement by Samsung itself.[37] Mr. Grecia's email "extended a February 15th, 2021 communication date for Samsung . . . to express interest in a continued discussion of the offered proposal."[38] His email also stated he would not "assert an aggressive strategy" against parties considering his proposals.[39]  Samsung claims it had not been considering Mr. Grecia's proposals nor did it plan on engaging in any discussion with him.[40]  Mr. Grecia does not allege Samsung responded.

### *Mr. Grecia's suit against retailer Kohl's.*

So Mr. Grecia sued. But not Samsung.  On January 30, 2021, Mr. Grecia instead sued Kohl's Corporation in the United States District Court for the Western District of Texas (the "Kohl's suit"), alleging Kohl's EMV ("Europay, Mastercard, and Visa") point of sale devices used at the checkout counter in Kohl's stores infringe claim 2 of the '555 patent.[41] Mr. Grecia alleges in Texas "Kohl's uses, owns, and controls [the] EMV point of sale device" which allegedly infringes the '555 patent.[42] He claims the infringing action by Kohl's EMV point of sale devices includes its monitoring of access to "financial data of one or more payment systems (computer based apparatus) by writing data to describe which tokenized [Primary Account Number] data is associated with a De-tokenized Authorization ID relational data" and receiving of access request for computer facilitated financial data by receiving a tokenized Primary Account Number. [43]

Mr. Grecia does not allege infringement by Samsung or either of its software products, Samsung Knox and Samsung Pay.[44] Mr. Grecia attaches a claim chart as an exhibit to his Kohl's suit complaint including a picture of the Kohl's EMV point of sale device and the Samsung Pay application but does not allege it is an infringing product of the suit.[45] He claims he did not include Samsung as a defendant in the Kohl's suit considering his one-sided view of ongoing negotiations

between the parties; Samsung claims it had no intention of negotiating or considering Mr. Grecia's proposals.[46]

### Samsung's declaratory action suit filed in Mr. Grecia's home District.

Samsung sued Mr. Grecia here in his home District on February 5, 2021, "[t]o put to rest any question of Samsung's alleged infringement of the '555 patent, and to try to end [Mr.] Grecia's years-long ongoing harassment."[47]  As it did in its 2016 and 2019 lawsuits involving Mr. Grecia's claims on the '860 and '308 patents, Samsung asks us to declare its "accused products"—Samsung Knox and Samsung Pay software—do not infringe Mr. Grecia's '555 patent and the '555 patent is invalid.[48]

### Mr. Grecia then sues Samsung Austin Semiconductor (SAS) in Texas.

One day after Samsung sued him here, Mr. Grecia sued an Austin, Texas-based Samsung entity, Samsung Austin Semiconductor ("SAS"), in the United States District Court for the Western District of Texas, where the Kohl's suit is pending.[49] Mr. Grecia alleges the Samsung Knox software infringes only claim 17 of the '555 patent.[50]  He brought this SAS suit and  then admitted days later in having "no interest in taking action on the Samsung Knox chart [sent on January 15]."[51]

Samsung claims SAS's semiconductor business is entirely unrelated to Samsung's Knox product and SAS is not, and has never been, involved in the design, development, manufacture, promotion, marketing, sale, or importation into the United States of the Samsung Knox software accused in the case.[52] Mr. Grecia alleges the "Knox platform is anchored in the actual chipset of the device . . . Samsung phones, tablets, and wearables."[53] Samsung alleges SAS has no role in the installation or selection of the software to be installed onto the finished chips.[54]  We have no

present basis to agree or disagree.  These later raised issues relate only to claim 17 of the '555 patent at issue before us but only to a much smaller degree.

## II.    Analysis

Samsung asks us to declare: (1) the Knox and Samsung Pay software products do not infringe the '555 patent, and (2) the '555 patent is invalid under 35 U.S.C. § 1; 28 U.S.C. §§ 2201, 2202.[55] Mr. Grecia moves to dismiss Samsung's claim, or, in the alternative, to transfer or stay the action, arguing the first-to-file rule applies because the present case and the Kohl's suit involve the same patent and the same allegedly infringing product.[56] Mr. Grecia argues dismissal, rather than transfer of venue or staying the action, is appropriate because it promotes judicial economy and avoids the "significant risk of conflicting or inconsistent judgments."[57] He seeks, in the alternative, "any causes of action that are not dismissed outright should be transferred to the Western District of Texas to be joined in [his] action against [SAS]."[58] He also argues Samsung's action is barred by Federal Rule of Civil Procedure 13(a), the compulsory counterclaim rule, which requires a pleading to "state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party."[59]

### A.    We decline to apply the first-to-file rule.

We decline to apply the first-to-file rule and transfer to Texas when the Kohl's suit involves a different alleged infringing product, and Mr. Grecia filed his suit against SAS after Samsung filed this suit.

Mr. Grecia argues Samsung's action should be dismissed because the first-to-file rule applies to Samsung's declaratory judgment action. He argues his January 30, 2021 complaint against Kohl's in the Western District of Texas is the first-filed action ahead of Samsung's February 5, 2021 action here. Mr. Grecia alternatively argues if Samsung's action here is the first-

filed, we should not apply the first-filed rule because Samsung's action here is "anticipatory" making it an exception to the first-filed rule. He argues it would not be unjust or inefficient to continue the suit in the first-filed action, and as the patent-holder filing first, he is "entitled to respect." Samsung argues the first-to-file rule does not apply to this suit because this action is the first-filed suit and an exception to the first-to-file rule does not apply. We disagree with Mr. Grecia and deny his motion to dismiss or transfer.

### 1.    We decline to apply the first-to-file rule based on the Kohl's suit.

The first-to-file rule offers district courts guidance when "[t]he party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter."[60] "[W]here there are parallel proceedings, in different federal courts, the first court in which jurisdiction attaches has priority to consider the case."[61]  The rule is meant to encourage "sound judicial administration and promote[] comity among federal courts of equal rank."[62]  "The forum of the first-filed case is favored unless fairness or efficiency considerations require otherwise."[63] An "ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the [district court]" in deciding whether the first-to-file rule applies.[64]

Mr. Grecia argues the first-to-file rule applies because the Kohl suit is "first in time, … currently pending, and filed in the Western District of Texas which is the proper venue for Samsung to litigate each party's claims related to the patents-in-suit."[65] He argues because the Kohl's suit and this suit "involve the same patent and same allegedly infringing product," the subject matter requirement of the first-to-file rule is met because there is no requirement the parties in both suits be the same.[66]

Samsung argues this case is the first-filed suit because the Kohl's suit has no relation to this case other than the same patent, the '555 patent, is asserted.[67] Samsung argues the Kohl's suit does not identify Samsung Pay as an accused product and the alleged infringing product in the Kohl's suit – the EMV point of sale device – is unrelated to the products in this suit, Samsung Knox and Samsung Pay software.[68] We agree with Samsung.

We are aware courts readily apply the first-to-file rule to cases involving the same parties and the same transaction but not so readily in cases involving different parties or different transactions. Our Court of Appeals has not offered first-to-file guidance in the patent infringement/invalidity context.[69]

We apply the substantive law of patents guided by the Court of Appeals for the Federal Circuit. We also follow its guidance on procedural matters affecting "national uniformity in patent practice."[70] The Court of Appeals for the Federal Circuit in *In re Telebrands Corp.* instructs the first-to-file rule "stands for the common sense proposition that, when two cases are the same or very similar, efficiency concerns dictate that only one court decide both cases."[71] The Federal Circuit distinguishes two scenarios where the district court may apply the first-to-file rule, holding "[w]here the overlap is complete or nearly complete, the usual rule is for the court of first jurisdiction to resolve the issues . . . [b]ut where there is less overlap, the second district court has considerably more discretion."[72] It direct "'judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute.'"[73]

We are also aware of our colleagues in the District of Delaware's review in intellectual property matters so prevalent on their dockets.[74] For example, in *Time Warner Cable, Inc. v. USA Video Technology Corp.*, a cable service provider sought a declaratory judgment of

noninfringement, invalidity, and unenforceability of the patent in the District of Delaware after a patent holder sued several other cable service providers in the Eastern District of Texas alleging infringement.[75]  The patent holder moved to dismiss, transfer, or stay the cable service provider's declaratory judgment suit in Delaware, claiming the first-to-file rule applied because the case involved the infringement of the same patent, and the same technology first-filed in the Texas suit.[76]  Judge Thynge found despite the cable service provider not being named as a defendant in the Texas suit, the first-to-file rule applied because "both suits concern the alleged infringement of the [same] patent" and the "suits share the same facts and deal with the same allegedly infringing products."[77]  Recognizing our Court of Appeals' application of the first-to-file rule "to litigation that involves the same subject matter, not necessarily the same parties," Judge Thynge held the first-to-file rule is determined by "'which court first obtains possession of the subject of the dispute, not the parties of the dispute.'"[78]

In *Fuisz Pharma LLC v. Theranos, Inc.*, Judge Burke assessed whether the first-to-file rule applied where the suits at issue involved the same patent and the same parties, but different legal claims. In the first suit filed in the Northern District of California, a company sued a patent holder for inventorship claims and nine state law claims.[79]  "All of the claims were based on the same factual premise: [the patent holder] misappropriated [the company's] confidential information to obtain [the patent]."[80]  Five days later, the patent holder sued the company in Delaware for infringing its patent.[81]  The company moved to dismiss, stay or transfer to the Northern District of California, claiming the first-to-file rule applied.[82]  Judge Burke, adopting Judge Thynge's rationale in *Time Warner*, found the focus of the applicability of the first-to-file rule in a patent infringement case "is on whether the same common subject matter exists among the two cases, not whether the legal claims at issue are identical."[83] Although the issues in the second-filed suit had

not been "squarely before the [first-filed] court," Judge Burke held the first-to-file rule applied because the two suits involved "common matters" – the same parties, the same factual premise, and the same patent.[84]

While our Court of Appeals has not opined on the first-to-file rule in the present context, colleagues in this District have analyzed the scope of the first-to-file guidance. "Some courts take a narrow view of the [first-to-file] rule and apply it only when the parties and claims in the later-filed suit are a 'mirror image' of the first . . . Others have embraced a broader, close-enough-for-government-work approach to the rule and applied it to 'disputes involving similar, concurrent actions.'"[85] "The scope of the first-to-file rule – exactly *how* related the cases must be for the rule to apply – has mostly developed in the district courts, without a definitive ruling from [our Court of Appeals]."[86]

For example, in *Shire U.S., Inc. v. Johnson Matthey, Inc.*, Judge Rufe applied the first-to-file rule where the first suit involved both the same patent and same product.  Judge Rufe observed, "district courts . . . in [our Court of Appeals] repeatedly have stated that the rule hinges on which court first takes possession of the *subject* of the dispute, and not necessarily the parties to it."[87] Judge Rufe held "[t]he 'subject matter' requirement of the first-to-file rule is satisfied . . . where the action in question involves the same patent and the same allegedly infringing product, though not necessarily the same parties."[88] The rule accomplishes its "purpose of avoiding wasteful, and potentially inconsistent, duplicative litigation where it causes one action regarding a particular product's possible infringement of a patent to yield another, earlier-filed action regarding the exact same question."[89] Judge Rufe also noted "courts within and outside [our Circuit] have found no requirement that the parties in the concurrent actions be the same in order for the first-to-file rule

to apply" and "[a] rigid requirement that there be identical parties in the actions at issue would be at odds with the rule's flexible nature, which the Federal Circuit has emphasized."[90]

Judge Diamond in *Phoenix Insurance Co. Ltd. v. Teva Pharmaceutical Industries Ltd.* agreed with Judge Rufe, adopting the "more flexible approach" to the first-to-file rule, finding it "more fully meet[s] the purposes of the [first-to-file] rule."[91] Judge Diamond held "[t]he applicability of the [first-to-file] rule is not limited to mirror image cases where the parties and the issues perfectly align."[92] Judge Diamond opined the principles underlying enforcing the first filed rule apply where the subject matter of the later filed case substantially overlaps with the earlier one."[93] But in *Landau v. Viridian Energy PA LLC*, Judge McHugh applied a two-tiered approach outside of the patent infringement/invalidity context.[94] Judge McHugh held where two actions arise out of an integrated dispute, "transfer, stay, or dismissal of the later-filed action should be required in the absence of exceptional circumstances."[95] Judge McHugh alternatively found "[a]s a matter of simple logic, however, the rule does not carry the same force when (1) different parties are involved, (2) the underlying dispute involves similar but not identical issues, and (3) the controlling law is from different jurisdictions. Any relationship between such cases is necessarily more attenuated."[96]

Because Samsung's claims before us arise in the patent infringement and invalidity context and we find no cases in this District suggested we need identical parties to apply the first-to-file rule, we are more inclined to follow Judge Rufe's persuasive analysis in *Shir*e. The issue becomes whether the subject of the dispute – the patent *and* the patent-infringing product – are the same in the Kohl's suit and in this case.

We are guided by comparing our facts with those addressed in Judge Jones's analysis in *Armstrong World Industries., Inc. v. Congoleum Corp.* A seller sought judgment declaring the

invalidity of a patent for a type of floor tile and the non-infringement of the seller's resilient vinyl floor-tile products.. [97] The patent at issue, entitled "Resilient Floor Tile," applied to "a type of luxury vinyl floor tile that contains limestone and has a contoured edge."[98] The patent holder first sued the manufacturer in another District for infringement of its patent.[99] The patent holder then began to threaten its retailers for infringing the patent by "making and/or selling various vinyl floor tiles."[100] The seller responded by filing a declaratory judgment suit before Judge Jones.[101] The patent holder moved to transfer the seller's declaratory judgment claims to the district where the patent holder had the pending patent infringement claims against the manufacturer of allegedly infringing resilient floor tiles.[102]

Judge Jones, applying Judge Rufe's rationale in *Shire*, held even though the patent holder did not sue the seller in the first-filed case against the manufacturer, the cases satisfied the subject matter requirement of the first-to-file rule because "[e]ach case turns on the same subject matter – the alleged infringement of the [] patent by the manufacturers of [the infringing product]."[103] Judge Jones found transferring the action would achieve the first-to-file rule's "[c]ore purpose of avoiding wasteful, and potentially inconsistent, duplicative litigation where it causes one action regarding a particular product's possible infringement of a patent to yield to another earlier-filed action regarding the exact same question."[104]

We can contrast Judge Jones's analysis with the Federal Circuit's in *In re Cinemark Holdings* affirming Judge Gilstrap's finding the first-to-file rule did not apply.[105] The case concerned technology used in the movie industry to securely distribute digital content – referred to as "DCI-complaint" technology.[106] A manufacturer produced DCI-compliant components, referred to as "IMBs" for movie theatre companies to incorporate into DCI-compliant equipment suites.[107] A patent holder alleged movie theatre companies directly infringed its method and

apparatus claims of eleven of its patents through the use of these equipment suites.[108] Before the patent holder sued the movie theatre companies, the producer of the IMBs sued the patent holder "seeking a declaratory judgment that its sale of IMBs to [the movie theatre companies] did not directly infringe the same patents asserted in underlying actions asserted against [the movie theatre companies.]"[109] The movie theatre companies, although not a party to the producer's suit, moved to transfer the patent holder's suit to the court of the producer's pending action, "arguing primarily that transfer was warranted under the first-to-file rule."[110]

Judge Gilstrap recognized "the first-filed action is generally given preference when identical or highly related suits are filed in separate courts but held that such preference did not warrant transfer because 'there is not an identity of parties or infringement allegations' and that [the movie companies'] 'alleged infringement does not completely coincide with that of [the producer] and the resolution of the [producer's action] will not moot the issues presented.'"[111]

The Court of Appeals for the Federal Circuit confirmed "[a] district court generally has considerable discretion in deciding whether to transfer under [the first-to-file] rule."[112] The Court of Appeals distinguished the alleged infringing products in each of the suits, noting "the [producer's] action focuses on the producers IMBs, [and] these suits focus on [the movie theatre companies'] use of equipment suites, some of which use IMBs made by producers other than [the producer]".[113] The patent holder argued other components used in the movie theatre companies' equipment suites aside from IMBs could independently meet most of the same limitations for the claims asserted in the suits against the movie theatre company. The Court of Appeals found the issues of infringement between the two suits "are not clearly common between the cases and resolution of the [producer's] action would not necessarily resolve the [patent holder's action]."[114] The Court of Appeals held "the district court [] had at least a plausible basis to conclude that

transfer of these cases would not likely reduce piecemeal resolution and minimize the possibility of embarrassing inconsistent results that the first-to-file rule was designed to prevent."[115]

Turning to Mr. Grecia's claims, the similarity of the alleged infringing products in the Kohl's suit and this suit are closer to the similarity of the products in *Cinemark* than in *Armstrong*. Mr. Grecia sues retailer Kohl's for its alleged infringement of the '555 patent and seeks judgment Kohl's directly infringed claim 2 of the '555 patent through the use of an EMV point-of-sale device owned by Kohl's.[116] Mr. Grecia alleges Kohl's "uses, owns, and controls the EMV point of sale device."[117] Mr. Grecia does not name Samsung or any of its entities.[118] Mr. Grecia does not allege Samsung has a role in the allegedly infringing act in the Kohl's suit. His only reference to Samsung is an unclear picture of Samsung Pay in an attached claims chart to his Complaint in Texas, which Mr. Grecia argues is his "implicit assertion" Samsung also infringed the patent.[119] Mr. Grecia concedes he purposely did not sue Samsung in the Kohl's suit.

Our case is different from the Kohl's suit beyond the absence of Samsung there. Samsung asks us to declare Samsung's "accused products" do not infringe the '555 patent and the '555 patent is invalid. The "accused products" Samsung names in its complaint are "Samsung's Knox software, Samsung Pay software, or any immaterially different Samsung products." Samsung's declaratory judgment involves all remaining twenty claims of the '555 patent at issue, and all of the "accused products," not just Samsung Pay.

Samsung concedes Samsung Pay is compatible with the EMV point of sale devices used in Kohl's stores but argues Mr. Grecia's allegations against Kohl's are based on how the Kohl's EMV product processes payments. Samsung alleges the payment processing used on the Kohl's EMV point of sale devices are distinct from Samsung Pay's electronic credit/debit card functionality.  Samsung compares the difference between the two products as "akin to the

difference between pre-digital payment acts of opening one's wallet or pocketbook to obtain cash (what Samsung Pay does) and ringing up a purchase up to the cash register (what [Kohl's] point of sale device does)."[120]

Although Samsung Pay may be compatible with the Kohl's EMV point of sale devices, it is not considered a "component," and other methods of payment can be used to complete a transaction on the Kohl's EMV point of sale devices. The similarity of the infringing products in this suit and the Kohl's suit are not like the infringing products in *Armstrong*, where both the manufacturer's suit and the company's suit involved resilient floor tiles. The infringing products here are more like the circumstances in *Cinemark*; even though both cases involve the alleged infringement of the same patent, the cases may be resolved without the "embarrassing inconsistent results that the first-to-file rule was designed to prevent" because the cases do not involve the same products or the same questions. The issue of whether the Samsung Knox and Samsung Pay software infringe upon all remaining twenty claims of the '555 patent in this suit and whether the Kohl's EMV point of sale device infringes upon only claim 17 in the Kohl's suit can be resolved without the fear of piecemeal resolution.

The first-to-file rule does not apply because Mr. Grecia fails to satisfy the subject matter requirement.

## 2.     We may not apply the first-to-file rule to Mr. Grecia's SAS suit.

Samsung sued Mr. Grecia here in his home District on February 5, 2021, a day before Mr. Grecia responded by suing another Samsung entity (SAS) in the Western District of Texas on February 6, 2021. Samsung ask us declare Samsung's Knox and Samsung Pay software products do not infringe the '555 patent and invalidate every claim of the '555 patent not previously held invalid.[121] Mr. Grecia's later suit against SAS alleges only the Knox software infringes the '555

patent, but not Samsung Pay, and asserts only claim 17 of the '555 patent, which is dependent on claim 15.[122] We agree with Samsung this suit is the first-filed suit.

The first-to-file rule, just as it sounds, "generally favors the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions" and the court which first takes possession of the subject must decide it.[123] "The filing date of an action derives from the filing of the complaint."[124]

The Kohl's suit does not satisfy the first-to-file rule's subject matter requirement and will not be considered as the first-filed case against Samsung's declaratory judgment suit. The two cases involving the '555 patent and whether Samsung's accused products infringe on the patent are this suit and Mr. Grecia's suit against SAS. Samsung filed its complaint on February 5, 2021, a day before Mr. Grecia filed his complaint against SAS.  Because Samsung filed its suit first, subject to any exceptions to the first-to-file rule, we may retain jurisdiction over this case.

### 3.   No exception to the first-to-file rule applies.

Mr. Grecia apparently concedes his SAS suit is later filed but argues we should disregard the earlier filing of this lawsuit Samsung filed here in anticipation of him suing Samsung in Texas. We find no support for this exception.

"[T]he first-filed action is favored 'unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise."[125] "Exceptions to the first-filed rule are not rare and are made when justice or expediency requires, including when the first-filed action is the result of forum-shopping and if the balance of convenience favors the second forum."[126] This flexible standard is "motivated by equitable principles and practical considerations – '[d]istrict courts have always had discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-[to-file] rule.'"[127] "Courts in this Circuit have

recognized several such exceptions, including when the second-filed action has developed further than the first, and when there is evidence of anticipatory filing, improper forum shopping, gamesmanship, or other bad faith by the first filer."[128] An exception to the first-to-file rule "must be justified by a 'sound reason that would make it unjust or inefficient to continue the first-filed action.'"[129] The party opposing application of the rule has the burden of showing an exception applies.[130]

### It is not unjust or inefficient to continue Samsung's declaratory judgment suit in this Court.

Samsung argues judicial efficiency favors proceeding in this suit because Mr. Grecia's second-filed SAS suit includes only a subset of the issues raised in this case.[131] Samsung argues Mr. Grecia's case against SAS is much narrower than the case before us: it does not involve Samsung Pay; only asserts claim 17, which is dependent on claim 15 rather than all remaining twenty claims; does not include the real parties in interest; and, includes both software products Mr. Grecia repeatedly wrote about in his letters as infringing his '555 patent leading up to this suit.[132] Mr. Grecia, assuming we would find the Kohl's suit as the first-filed, argues only Samsung is not able to "provide a sound reason why proceeding in Texas would be unjust or inefficient" but does not show why proceeding in Pennsylvania, in the District where he resides, would be unjust or inefficient.

The first-to-file rule is intended to "promote judicial efficiency" and "reduce piecemeal resolution."[133] Proceeding here in Mr. Grecia's home District will promote judicial efficiency.

### The anticipatory filing exception does not apply.

Mr. Grecia argues we should dismiss this case as an impermissible anticipatory suit motivated solely by considerations of forum shopping.[134] He argues Samsung knew about the February 5, 2021 deadline to respond to his proposals and also of the Kohl's suit because "the

chart has Samsung in place for an amended 'induced infringement' action."[135] Samsung contends it had not been improperly motivated by the "anticipation" of the second-filed SAS suit and did not engage in an improper forum-shopping "race to the courthouse."[136]

"[T]he purpose of the Declaratory Judgment Act [is] to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist."[137] "A district court's decision to entertain a declaratory action is discretionary."[138] Although the first-to-file rule generally allows the district court to exercise jurisdiction over a first-filed case, "courts have rejected the rule . . . when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable forum."[139] "Anticipatory suits are found when the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent, and are viewed with disfavor as examples of forum shopping and gamesmanship."[140] "[D]eparture from the [first-to-file] rule is well recognized in instances where the first-filing party 'raced to the courthouse' in anticipation of the other party filing suit in a less favorable forum."[141] "While filing suit in a forum that is more favorable and convenient for the party does not automatically equate to forum shopping, such a filing may be improper if it was motivated by an inappropriate purpose or done to avoid suit in another more logical forum."[142] Before finding a suit is improperly anticipatory and departure from the first-to-file rule is warranted, a court must find "[s]ome evidence that a first-filed case was filed for the purpose of forum shopping or in bad faith," like when a filing preemptively forecloses settlement negotiations.[143]

We are guided by the analysis in a case before Judge Pappert in our District and reviewed by the Court of Appeals for the Federal Circuit last year.  In *Communications Test Design, Inc. v. Contec*, *LLC*, a manufacturer sought a declaratory judgment its test systems did not infringe two

patents for testing set-up boxes and multimedia devices.[144] The patent holder moved to dismiss the declaratory judgment suit, or in the alternative to transfer or stay, arguing the manufacturer filed the action "in bad faith during active licensing discussions, only after inducing [the patent holder] to refrain from filing its own complaint against [the patent holder] in a different forum."[145] Judge Pappert declined to exercise jurisdiction over the declaratory judgment action and dismissed the manufacturer's complaint in favor of a patent infringement suit filed by the patent owner in a different district days after the manufacturer filed the declaratory judgment suit.[146]

The Court of Appeals for the Federal Circuit affirmed Judge Pappert's dismissal of the first-filed complaint noting a district courts "unique and substantial discretion in deciding whether to declare the rights of the litigants."[147]   The Court of Appeals analyzed, "[w]hen one of two competing suits in a first-to-file analysis is a declaratory judgment action, district courts enjoy a 'double dose' of discretion: discretion to decline to exercise jurisdiction over a declaratory judgment action and discretion when considering and applying the first-to-file rule and its equitable exceptions."[148] The Court of Appeals, recognizing the anticipatory nature of the company's suit is "merely one factor in the analysis" in determining whether it would be unjust to exercise jurisdiction over the action, found no error in Judge Pappert's balancing of the convenience factors, "which is committed to the court's sound discretion."[149]

We face a different situation.  Although Mr. Grecia regularly communicated purchase offers to Samsung arguing it infringes the '555 patent or related patents and failed to disclose the '555 patent on its patent application, Samsung always denied the allegations and repeatedly rejected Mr. Grecia's proposals to buy his patent portfolio. On April 17, 2020, Samsung's counsel told Mr. Grecia and his lawyer (who is not in this case) it "demands and expects that both Mr. Grecia and you will refrain from sending further baseless allegations, improper threats, or

unproductive demands to settle. And, as noted above, should Mr. Grecia act on his allegations as to the '555 patent, Samsung will pursue sanctions and all other available relief against him and his attorneys."[150]  Mr. Grecia continued to send letters to Samsung, including in January 2021, when he re-offered his patent portfolio and threatened Samsung again, requesting it "let [Mr. Grecia] know if [his] proposal to protect Samsung's overall portfolio and product interests is of value . . . by February 5, 2021."[151]  Samsung did not respond.   Mr. Grecia nevertheless unilaterally extended this deadline to February 15, 2021 for Samsung to "express interest or non-interest in a continued discussion of the offered proposal."[152] Samsung never responded to Mr. Grecia nor did it express interest in or give Mr. Grecia any reason to think it would discuss his repeatedly rejected overtures. "To put to rest any question of Samsung's alleged infringement of the '555 patent, and to try to end [Mr.] Grecia's years-long ongoing harassment," Samsung filed this declaratory judgment suit in the District where Mr. Grecia resides.[153]

There is no basis to find Samsung engaged in either forum shopping or bad faith in filing this declaratory judgment suit.  Samsung chose to sue Mr. Grecia in his home District. There is no support for a finding this suit is an effort to "race to the courthouse." Mr. Grecia has been offering to sell with threats for almost six years. Samsung's suit hopes to resolve the issues efficiently in the District where the patent owner resides, rather than in a District court over two thousand miles away. Where there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, a declaratory judgment action should not be subject to dismissal.[154]

We face an actual controversy between Samsung and Mr. Grecia which we may efficiently decide.  There is no basis to find Samsung filed this case to forum shop (in Mr. Grecia's home District) or in bad faith. We deny Mr. Grecia's Motion to dismiss, or in the alternative transfer or

stay this matter, on the basis the first-to-file rule applies and find no exception warranting dismissal.

### B.     This case is not barred by the compulsory counterclaim rule.

This case is not barred by the compulsory counterclaim rule because Samsung is not an "opposing party" in the Kohl's suit and Samsung sued Mr. Grecia before he sued non-party SAS.

Mr. Grecia argues Samsung's declaratory judgment action should be barred by Federal Rule of Civil Procedure 13(a), the compulsory counterclaim rule, which requires a party to "state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."[155] Mr. Grecia does not specify which suit – either his suit against Kohl's or his February 6, 2021 suit against SAS – required Samsung to make a compulsory counterclaim. Samsung is not barred in either case because it is not an "opposing party" in the Kohl's suit and it began this case before Mr. Grecia's sued non-party SAS.

#### 1.     Samsung's claims are not compulsory counterclaims in the Kohl's suit.

We cannot dismiss this case under the compulsory counterclaim rule based on the Kohl's suit. "For a claim to qualify as a compulsory counterclaim . . . the relevant inquiry is whether the counterclaim 'bears a logical relationship to an *opposing party's* claim.'"[156] "A logical relationship between claims exist where separate trials on each of the claims would 'involve a substantial duplication of effort and time by the parties and the courts.'"[157] The objective of the compulsory counterclaim rule is "to promote judicial economy, so the term 'transaction or occurrence' is construed generously to further this purpose."[158]

We are instructed by our Court of Appeals' rationale in *Transamerica Occidental Life Insurance. Co. v. Aviation Office of America, Inc.* when assessing whether Samsung is an

"opposing party" in the Kohl's litigation.[159] In *Transamerica*, our Court of Appeals held the compulsory counterclaim rule's "opposing party" requirement should be interpreted broadly to promote the goal of judicial efficiency, particularly when the unnamed party "may be so closely identified with a named party as to qualify as an 'opposing party' under Rule 13(a)."[160] Our Court of Appeals cited the Court of Appeals for the Second Circuit's holding in *Banco Nacional de Cuba v. First National City Bank of New York*, "because the parties 'acted as a single entity' and because one was the alter ego of the other, both were 'opposing parties' withing the meaning of Rule 13."[161] Our Court of Appeals also cited the Court of Appeals for the Tenth Circuit in *Avemco Insurance Co v. Cessna Aircraft Co.*, recognizing " an insurer-subrogee, though not a named party to the original litigation, to be an opposing party for Rule 13(a) purposes because of its close relationship with the named opposing party." [162] Our Court of Appeals held "where parties are functionally equivalent as in *Avemco*, where an unnamed party controlled the litigation, or where, as in *Banco Nacional*, an unnamed party was the alter ego of the named party, they should be treated as opposing parties within the meaning of Rule 13."[163]   After determining the opposing party requirement should be interpreted broadly, our Court of Appeals held an insurance company assuming the rights and obligations of other corporations and conducting litigation on behalf of and in the name of the corporations is an opposing party for purposes of the compulsory counterclaim rule.[164]

In *Hytera Communications Corp. v. Motorola Solutions, Inc.*, Judge Dickson declined to apply the compulsory counterclaim rule when deciding whether a company not named as a party in the original suit qualified as an opposing party.[165] The company had been acquired by a party in the original suit two months after it began but otherwise had no relation to or control over the parties in the original suit.[166] Judge Dickinson compared the facts to those in *Avemco*, *Banco*

*Nacional*, and *Transamerica*, and found nothing in the record to indicating a close relationship with the named party or rendering the company an "alter ego" or "functional[] equivalent" of the parties in the original suit.[167] Judge Dickinson held because there existed "no reasonable basis in the record for classifying [the company] as an 'opposing party' in the [original suit], the compulsory counterclaim rule did not apply.[168]

The relationship between Samsung and Kohl's, the party in the original suit, is more like the relationship between the parties in *Hytera* than the related parties in *Avemco*, *Banco Nacional*, and *Transamerica*.  Mr. Grecia does not plead facts showing Samsung exercises control over the Kohl's suit or Samsung assumed Kohl's rights or obligations. The only relationship between Samsung and Kohl's is Mr. Grecia's claim Kohl's is a customer of Samsung.[169] We find no cases, nor does Mr. Grecia cite any, holding a manufacturer-customer relationship makes the parties "functionally equivalent" so as to be considered as an opposing party under the compulsory counterclaim analysis. Nor is a manufacturer-customer relationship comparable to insurer-subrogee or insured-subrogor relationships, where the subrogee stands in the shoes of the subrogor, and is "entitled to assert all of the subrogor's rights and claims against the responsible third party."[170] We have no allegation Samsung is entitled to assert Kohl's rights and claims.  Samsung is not an opposing party in the Kohl's suit. We deny Mr. Grecia's Motion to dismiss based on the compulsory counterclaim in the Kohl's suit.

### 2.    Samsung is not compelled to file counterclaims in the SAS suit.

We are also not persuaded by Mr. Grecia's argument we should dismiss this case because Samsung could counterclaim in the later filed case against non-party SAS.

"A defendant is precluded [from bringing a claim in a second action] only if (1) the claim or defense asserted in the *second action* was a compulsory counterclaim that the defendant failed

to assert in the first action, or (2) the claim or defense represents what is essentially a collateral attack on the first judgment.[171]

Mr. Grecia admittedly sued SAS after Samsung started this case. Because Samsung filed this suit first, the compulsory counterclaim rule does not apply.

## III.    Conclusion

The first-to-file rule does not apply because the Kohl's suit and this suit do not involve the same infringing product and Mr. Grecia sued SAS after Samsung brought this suit. We deny Mr. Grecia's Motion to dismiss on the grounds Samsung is barred by the compulsory counterclaim rule. We deny Mr. Grecia's Motion to dismiss or to transfer.

---

[1] ECF Doc. No. 5 at 7.

[2] *Id.*

[3] *Id.*

[4] ECF Doc. No. 1 ¶ 12.

[5] Samsung, *Samsung Electronics Co., Ltd. 2020 Half-year Business Report* (2020), https://images.samsung.com/is/content/samsung/p5/global/ir/docs/2020_Half_Year_Report.pdf.

[6] ECF Doc. No. 19 at 11 (using the pagination assigned by the CM/ECF docketing system).

[7] *Id.*

[8] ECF Doc. No. 1 ¶ 14.

[9] ECF Doc. No. 5 at 7; ECF Doc. No. 5-2.

[10] *Id.*

[11] *Id.* at 7; ECF Doc. No. 5-4.

[12] ECF Doc. No. 5 at 8.

---

[13] *Id.* at 4.

[14] ECF Doc. No. 1 ¶ 12.

[15] *Id.* ¶ 11.

[16] ECF Doc. No. 19 at 6; *Grecia v. Samsung Elecs. Am., Inc*., No 15-975 (N.D. Cal. Mar. 24, 2015).

[17] ECF Doc. No. 19 at 6.

[18] *Id.*; *Grecia v. Samsung Elecs. Am., Inc.*, No. 16-9691 (S.D.N.Y. Sept. 8, 2018); *Grecia v. Samsung Elecs. Am. Inc*., No. 19-3278 (S.D.N.Y. Mar. 13, 2020).

[19] ECF Doc. No. 19 at 7; *Grecia v. Samsung Elecs. Am., Inc*., 780 F. App'x 912 (Fed. Cir. 2019); *Grecia v. Samsung Elecs. Am., Inc*, 833 F. App'x 339 (Fed. Cir. 2021).

[20] ECF Doc. No. 19 at 7; *Grecia v. Sprint Commc'ns Co.*, No. 18-10426 (S.D.N.Y. Nov. 9, 2018); *Grecia v. T-Mobile USA, Inc.*, No. 18-10428 (S.D.N.Y. Nov. 9, 2018); *Grecia v. Verizon Commc'ns Inc*., No. 18-10429 (S.D.N.Y. Nov. 9, 2018).

[21] ECF Doc. No. 19 at 7; *Sprint*, No. 18-10426, Dkts. 33, 39; *T-Mobile*, No. 18-10428, Dkts. 30, 35; *Verizon*, No. 18-10429, Dkts. 32, 38.

[22] ECF Doc. No. 19 at 7.

[23] *Id.* at 8.

[24] *Id.*

[25] *Id.* (internal quotation marks omitted).

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at 9.

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.* at 9-10 (internal quotation marks omitted).

[39] *Id.* at 10 (internal quotation marks omitted).

[40] *Id.*

[41] *Id.* at 12; *Grecia v. Kohl's Corp.*, 21-102 (W.D. Tex. Jan. 30, 2021); ECF Doc. No. 5-7 ¶ 9.

[42] ECF Doc. No. 5-7 ¶ 9.

[43] *Id.* ¶ 10.

[44] *See generally id.*; ECF Doc. No. 19 at 12.

[45] ECF Doc. No. 5-7 at 10, 12.

[46] ECF Doc. No. 19 at 10.

[47] *Id.*

[48] ECF Doc. No. 1 ¶¶ 23-35, 36-52.

[49] *Grecia v. Samsung Austin Semiconductor*, No. 21-131 (W.D. Tex. Feb. 6, 2021).

[50] ECF Doc. No. 19 at 10.

[51] *Id.* at 11(alteration in original); ECF Doc. No. 19-16 at 2.

[52] ECF Doc. No. 19 at 11.

[53] *Id.* at 11-12 (internal quotation marks omitted).

[54] *Id.* at 12.

[55] *Id.* at 10.

[56] ECF Doc. No. 5 at 5. When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and

we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (internal quotation marks omitted)(quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (alternations in original) (third internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 675, 679).

[57] ECF Doc. No. 5 at 17-18.

[58] *Id.* at 6.

[59] *Id.* at 18 (quoting Fed.R.Civ.P. 13(a)).

[60] *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941).

[61] *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 737 (E.D. Pa. 2005).

[62] *Id.* at 738 (quoting *Equal Employment Opportunity Comm'n v. Univ. of Pa.*, 850 F.2d 969, 971-72 (3d Cir. 1988), *aff'd on other grounds*, 493 U.S. 182 (1990)).

[63] *Shire U.S., Inc. v. Johnson Matthey, Inc*., 543 F. Supp. 2d 404, 407 (E.D. Pa. 2008).

[64] *Merial Ltd. v. Cipla Ltd*., 681 F.3d 1283, 1299 (Fed. Cir. 2012) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)).

[65] ECF Doc. No. 5 at 6.

[66] *Id.*

[67] ECF Doc. No. 19 at 14.

[68] *Id.*

[69] Courts of Appeals have taken different approaches to the first-to-file rule, but the consensus is the rule may apply in cases where the subject matter of the suits is substantially similar. For example, the Court of Appeals for the Ninth Circuit has held "the first-to-file rule allows a district court to stay proceedings if a similar case with substantially similar issues and parties was

previously filed in another district court." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239-40 (9th Cir. 2015) (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 95 (9th Cir.1982)). The Court of Appeals for the Sixth Circuit instructs "suits filed in different districts to be duplicative . . . must involve "nearly identical parties and issues." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016) (quoting *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp*., 511 F.3d 535, 551 (6th Cir. 2007)). The Court of Appeals for the Sixth Circuit evaluates three factors: "(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Id.* (citing *Alltrade, Inc. v. Uniweld Prods., Inc*., 946 F.2d 622, 625 (9th Cir. 1991)). The Court of Appeals for the Tenth Circuit also adopted this framework, determining whether the first-to-file rule applied by "consider[ing] not only the chronology of events but also the similarities in the parties, issues, and claims." *Wakaya Perfection, LLC v. Youngevity Int'l, Inc*., 910 F.3d 1118, 1124 (10th Cir. 2018). The Court of Appeals for the Eleventh Circuit applies the first-to-file rule "when parties have instituted competing or parallel litigation," including "[w]here two actions involv[e] overlapping issues and parties" and the cases are "substantially similar." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading*, 713 F.3d 71, 78 (11th Cir. 2013) (first alteration in original)(quoting *Manuel v. Convergys Corp*., 430 F.3d 1132, 1135 (11th Cir. 2005)). The Court of Appeals for the Fifth Circuit instructs "[t]he [first-to-file rule] does not require the cases to be identical. Instead, '[t]he crucial inquiry is one of 'substantial overlap.'" *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp*., 665 F.3d 671, 678 (5th Cir. 2011) (third alteration in original) (footnote omitted) (quoting *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)).

[70] *Shire,* 543 F. Supp.2d at 408 (quoting *Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed.Cir.1993) *overruled on other grounds by Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995).

[71] 773 F. App'x 600, 602 (Fed. Cir. 2016) (citing *Save Power*, 121 F.3d at 950).

[72] *Id.* (citing *West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985)).

[73] *Id.* (internal quotation marks omitted) (quoting *Save Power*, 121 F.3d at 951).

[74] *See In re Mobile Telecommunications Techs., LLC*, 243 F. Supp. 3d 478, 483 (D. Del. 2017) (stating the first-to-file rule applies to "mirror-imagine litigation" or "if the relevant actions are 'identical or nearly identical'") (quoting *In re Telebrands Corp.*, 824 F.3d 982, 985 (Fed. Cir. 2016))); *AstraZeneca AB v. Dr. Reddy's Labs. Inc*., 209 F. Supp. 3d 744, 750 (D. Del. 2016) (the first-filed rule provides "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it") (alteration in original) (internal quotation marks omitted)(quoting *Hazeltine Corp.*, 12 F.2d at 929).

[75] 520 F.Supp.2d 579, 580 (D. Del. 2007).

[76] *Id*. at 585.

[77] *Id*. at 586.

[78] *Id.* at 585.

[79] No. 11-1061, 2012 WL 1820642, at *1 (D. Del. May 18, 2012), report and recommendation adopted, No. 11-1061, 2012 WL 2090622 (D. Del. June 7, 2012).

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] *Id.*, at *1-2, 7 (internal quotation marks omitted).

[85] *Landau v. Viridian Energy PA LLC*, 274 F.Supp.3d 329, 332-33 (E.D. Pa. 2017) (quoting *Palagno v. NVIDIA Corp.*, No. 15-1248, 2015 WL 5025469, at *2 (E.D. Pa. Aug. 25, 2015)).

[86] *Monzo v. Bazos*, 313 F.Supp. 3d 626, 631 (E.D. Pa. 2017).

[87] *Shire,* 543 F.Supp.2d at 409 (emphasis added) (citing *Time Warner Cable, Inc.*, 520 F. Supp. 2d at 585).

[88] *Id.* (citing *USA Video*, 520 F.Supp.2d at 586) (emphasis added).

[89] *Id.*

[90] *Id.* at 408; *see also id.* at 408 n.22.

[91] 381 F. Supp. 3d 416, 419 (E.D. Pa. 2019) (first alteration in original) (quoting *Law Sch. Admission Council, Inc. v. Tatro*, 153 F.Supp. 3d 714, 724 (E.D. Pa. 2015).

[92] *Id.* at 420 (first alteration in original) (quoting *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, No. 09-2552, 2009 WL 1845236, at *6 (E.D. Pa. June 26, 2009)).

[93] *Id.* (quoting *Villari Brandes & Kline, P.C.*, 2009 WL 1845236, at *6).

[94] 274 F. Supp. 3d 329 (E.D. Pa. 2017).

[95] *Id.* at 333.

[96] *Id.*

[97] No. 09-3618, 2009 WL 10739028, at *1 (E.D. Pa. Dec. 29, 2008).

[98] *Id.*

[99] *Id.*

[100] *Id.*

[101] *Id.*

[102] *Id.* at *3.

[103] *Id.*, at *4.

[104] *Id.* (internal quotation marks omitted) (quoting *Shire*, 543 F. Supp. 2d at 409).

[105] No. 2021-103, 2020 WL 7393227, at *2 (Fed. Cir. Dec. 17, 2020).

[106] *Id.* at *1.

[107] *Id.*

[108] *Id.*

[109] *Id.*

[110] *Id.*

[111] *Id.* (quoting *Intertrust Techs. Corp. v. Cinemark Holdings, Inc.*, No. 19-266, 2020 WL 6479562, at *8 (E.D. Tex. Sept. 30, 2020)).

[112] *Id.* at 2.

[113] *Id.*

[114] *Id.*

[115] *Id.*

[116] ECF Doc. No. 5-7 ¶ 9.

[117] *Id.*

[118] ECF Doc. No. 5 at 5; ECF Doc. No. 19 at 10.

[119] ECF Doc. No. 5-7 at 10, 12; ECF Doc. No. 5 at 11.

[120] ECF Doc. No. 19 at 12-13.

[121] ECF Doc. No. 1 ¶¶ 2, 23-35, 36-52.

[122] *Samsung Austin Semiconductor*, No. 21-131 (W.D. Tex. Feb. 6, 2021).

[123] *Cipla Ltd*., 681 F.3d at 1299; *see also Kim v. Kim*, 324 F. Supp. 2d 628, 635 (E.D. Pa. 2004) (quoting *Equal Employment Opportunity Comm'n*, 850 F.2d at 971).

[124] *Commc'ns Test Design, Inc. v. Contec, LLC*, 367 F. 3d 350, 353 (E.D. Pa. 2019) (citing Fed.R.Civ.P. 3), *aff'd* 952 F.3d 1356 (Fed Cir. 2020).

[125] *Genentech*, 998 F.2d at 937.

[126] *FMC Corp*., 379 F. Supp. 3d at 744 (quoting *Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc*., 350 F. Supp. 2d 620, 623 (E.D. Pa. 2004)).

[127] *Monzo*, 313 F. Supp. 3d at 530 (first alteration in original) (quoting *Equal Employment Opportunity Comm'n*, 850 F.2d at 972).

[128] *Id.* (citing *Equal Employment Opportunity Comm'n*, 850 F.2d at 976-77).

[129] *Shire*, 543 F. Supp. 2d at 408 (quoting *Genentech*, 998 F.2d at 937-38).

[130] *Se. Power Grp., Inc. v. SAP Am., Inc*., No. 20-398, 2020 WL 4805352, at *3 (E.D. Pa. Aug. 18, 2020) (citing *D & L Distrib., LLC v. Aqxplore Intern, LLC*, 959 F. Supp. 2d 757, 766 (E.D. Pa. 2013)).

[131] ECF Doc. No. 19 at 21.

[132] *Id*.

[133] *Merial*, 681 F.3d at 1299; *Cinemark*, 2020 WL 7393227, at *2.

[134] ECF Doc. No. 5 at 14.

[135] *Id.*

[136] ECF Doc. No. 19 at 17.

[137] *Genentech,* 998 F.2d at 937.

[138] *Drugstore-Direct, Inc.*, 350 F. Supp. 2d at 623 (E.D. Pa. 2004) (citing *Wilton v. Seven Falls Co*., 515 U.S. 277, 287 (1995); *see also id.* ("[C]onsistent with the nonobligatory nature of the remedy, a district court is authorized in the sound exercise of its discretion, to stay or dismiss an action seeking declaratory judgment . . . .").

[139] *Id.* (quoting *Equal Employment Opportunity Comm'n*, 850 F.2d at 976).

[140] *Xoxide, Inc. v. Ford Motor Co*., 448 F. Supp. 2d 1188, 1192 (C.D. Cal 2006) (quoting *Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc*., 179 F.R.D. 264, 271 (C.D. Cal. 1998)).

[141] *Samuel T. Freeman & Co. v. Hiam*, No. 12-1387, 2012 WL 2120474, at *13 (E.D. Pa. June 11, 2012) (citing *Koresko v. Nationwide Life Ins. Co*., 403 F. Supp. 2d 394, 399 (E.D. Pa. 2005).

[142] *Id.* (citing *EMS Acquisition Corp. v. Structure Probe Inc*., No. 07-03084, 2008 WL 375108, at *2 (E.D. Pa. Feb. 11, 2008)).

[143] *Id.*, at *11 (citing *Koresko*, 403 F. Supp. 2d at 401-02).

[144] 952 F.3d 1356 (Fed. Cir. 2020).

[145] *Id.* at 1360 (internal quotation marks omitted).

[146] *Id.* at 1359. About a year before the company filed the declaratory judgment suit, the patent holder sent a letter to the company to determine whether the company's test systems infringed any claims of the patents. *Id.* "Over the course of the following year, the parties had exchanged numerous emails and letters," and eventually met in person where the company disclosed certain information about its test systems, protected by a confidentiality agreement. *Id.* The patent holder sent a letter shortly after the meeting, explaining it had a good faith basis to believe the company infringes at least one claim of its patents. The letter asked the company to indicate by a specified date whether it intended to "discuss potential terms for a patent license agreement." *Id.* (internal quotation marks omitted).  The patent holder warned "if it did not receive such confirmation, it would sue for patent infringement." *Id.* On the specified deadline, the company's chairman and chief executive officer spoke with the patent holder's chief executive officer about a possible license for the patents. The patent holder's CEO proposed initial terms, and the executives agreed to talk again a week later, when the company's CEO would make a counterproposal. The patent holder's CEO sent an email to the company's CEO, confirming the follow-up call and indicating he looked forward to the counterproposal. The same day the company's CEO sent an email to the patent holder's CEO, confirming it would consider the potential terms in the most recent letter and "[d]espite [its] firm position on non-infringement and without admission, in an attempt to avoid an impasse, [the company would] remain willing to consider reasonable licensing terms and . . . encourage[d] a continued conversation between the executives." *Id.* (first alternation in original) (interal quotation marks omitted). Two days later, after accepting the patent holder's request to discuss licensing terms, the company filed the declaratory judgment suit. Judge Pappert held "although [the company] 'had every right, in its business and legal judgment, to break off negotiations and resort to litigation,' it was not permitted to 'string [the patent holder] along just long enough to get the judicial drop and file this lawsuit in its own backyard.'" *Id.* at 1360 (quoting *Contec, LLC,* 367 F.Supp.3d at 358). Judge Pappert noted the company's communications before and after its filing revealed its 'nefarious motive,' and ultimately determined "[the company]'s conduct was inconsistent with the policy of promoting extrajudicial dispute resolution, not to mention sound judicial administration and the conservation of judicial resources." *Id.* (quoting *Contec, LLC,* 367 F.Supp.3d at 357, 358). The convenience of the parties and availability of witnesses also factored into Judge Pappert finding "on balance the [district court of the second-filed suit] is a more convenient forum to resolve the dispute between the parties." *Id.* (internal quotation marks omitted) (quoting *Contec, LLC*, 367 F. Supp. 3d at 359).

[147] *Id.* at 1361 (internal quotation marks omitted) (quoting *Wilton*, 515 U.S. at 286).

[148] *Id.* at 1362 (citing *Kerotest Mfg. Co.*, 342 U.S. at 180).

[149] *Id.* at 1365.

[150] ECF Doc. No. 19-10 at 4.

[151] ECF Doc. No. 19-11 at 2.

[152] ECF Doc. No. 19-13 at 2.

[153] *Id.*

[154] *Contec*, 952 F.3d at 1361 (citing *Genentech*, 998 F.2d at 937).

[155] Fed. R. Civ. P. 13(a).

[156] *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389 (3d Cir. 2002) (emphasis added) (quoting *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978)).

[157] *Id.* at 389-90.

[158] *Id.* at 390.

[159] *Id.* at 390-93.

[160] *Id.* at 390 (citing *Avemco Ins. Co. v. Cessna Aircraft Co.*, 11 F.3d. 998 (10th Cir. 1993)).

[161] *Id.* at 391 (citing *Banco*, 478 F.2d 191 (2d Cir. 1973)).

[162] *Id.* at 390 (citing *Avemco*, 11 F.3d at 1001).

[163] *Id.*

[164] *Id.* at 393.

[165] No. 17-12445, 2018 WL 7108018 (D.N.J. Dec. 6, 2018).

[166] *Id.*, at *2.

[167] *Id.*

[168] *Id.*

[169] ECF Doc. No. 5 at 8.

---

[170] *In re Frescata Shipping Co., Ltd*., 886 F.3d 291, 309 (3d Cir. 2018), *aff'd sub nom*., *CITGO Asphalt Ref. Co. v. Frescati Shipping Co., Ltd*., 140 S. Ct. 1081 (2020).

[171] *Nasalok Coating Corp. v. Nylok Corp*., 522 F.3d 1320, 1324 (Fed. Cir. 2008) (emphasis added).